UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
MIAMI HOME LLC,

                        Plaintiff,

            -against-

MAGDA VIERA,

                        Defendant.
-----------------------------------------------------------------X

**REPORT & RECOMMENDATION**
18-CV-1398-NGG-SJB

**BULSARA, United States Magistrate Judge:**

On March 6, 2018, plaintiff Miss Jones, LLC ("Miss Jones") filed this foreclosure action pursuant to the New York Real Property Actions and Proceedings Law ("RPAPL") against defendants Magda Viera, Jack Viera, Barclays Bank Delaware ("Barclays"), the City of New York Environmental Control Board, and the Transit Adjudication Bureau (collectively, "Defendants"). (*See* Complaint dated Mar. 6, 2018 ("Compl."), Dkt. No. 1, ¶¶ 2–10). The property that is the subject of the litigation is 109-04 Northern Boulevard, Corona, New York 11368 (the "Subject Property"). (*Id.* ¶ 1).

After Defendants failed to appear and a default was entered against all of them, Miss Jones moved for default judgment. (Notice of Mot. dated May 25, 2018, Dkt. No. 17). The motion was denied without prejudice. *Miss Jones, LLC v. Viera*, No. 18-CV-1398, 2019 WL 926670, at *1 (E.D.N.Y. Feb. 5, 2019), *report and recommendation adopted*, 2019 WL 955279, at *2 (Feb. 26, 2019). Miss Jones's second motion for default judgment was also denied without prejudice. *Miss Jones, LLC v. Viera*, No. 18-CV-1398, 2020 WL 3002359, at *1 (E.D.N.Y. Jan. 29, 2020), *report and recommendation adopted*, 2020 WL 1527141, at *3 (Mar. 31, 2020). Over the course of

1

this litigation, Miss Jones voluntarily dismissed all Defendants—City of New York Environmental Control Board, the Transit Adjudication Bureau, Barclays, and Jack Viera—except Magda Viera ("Viera"). (Notice dated Dec. 13, 2018, Dkt. No. 20; Notice dated Feb. 13, 2019, Dkt. No. 25).

On October 29, 2021, the Court granted Miss Jones's motion to substitute Miami Home LLC ("Miami Home") as Plaintiff based on a transfer of interest in the Note and Mortgage. (Order dated Oct. 29, 2021). On December 28, 2021, Miami Home filed a renewed motion for default judgment against the sole remaining defendant, Viera. (Notice of Mot. for Default J. dated Dec. 28, 2021 ("Mot."), Dkt. No. 37). On January 4, 2022, the Honorable Nicholas G. Garaufis referred the motion to the undersigned for a report and recommendation. For the reasons stated below, it is respectfully recommended that Miami Home's motion for default judgment be denied.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On January 5, 2007, the Vieras executed a "Credit Line Mortgage" with National City Bank ("National City") for the Subject Property in the principal amount of $125,000. (Compl. ¶ 13; Mortgage dated Jan. 5, 2007 ("Mortgage"), attached as Ex. B to Compl. at 3). The Vieras initialed every requisite page and signed the Mortgage. (Mortgage at 3, 5–7). Paragraph nine of the Mortgage provided that if the Vieras were in default on their obligations, National City could foreclose. (*Id.* ¶ 9). Above the signature line, the Mortgage stated in bold capital letters that "default in the payment of this loan agreement may result in the loss of the property securing the loan." (*Id.* at 7 (emphasis removed)). The Note accompanying the Mortgage was executed the same day by Magda Viera, but not by Jack Viera. (Compl. ¶ 14; Note dated Jan. 5, 2007 ("Note"), attached as Ex. C to Compl. at 5).

PNC Bank, N.A., the successor—via merger—to National City, assigned the Mortgage to Trinity Financial Services, LLC ("Trinity Financial") on February 25, 2014. (Compl. ¶ 15; Assignment of Mortgage dated Feb. 25, 2014 ("Trinity Financial Assignment"), attached as Ex. D to Compl. at 2). Trinity Financial, in turn, transferred the Mortgage to 20 CAP Fund I, LLC ("20 CAP") on March 25, 2014. (Compl. ¶ 16; Corporate Assignment of Mortgage dated Mar. 25, 2014 ("20 CAP Assignment"), attached as Ex. D to Compl. at 4). On July 25, 2017, 20 CAP then transferred the Mortgage to Miss Jones. (Compl. ¶ 17; Corporate Assignment of Mortgage dated July 25, 2017 ("Miss Jones Assignment"), attached as Ex. D to Compl. at 6). The Note was transferred via allonges between the same parties, again ending with Miss Jones. (Compl. ¶¶ 15–17; Allonges to Note, attached as Ex. C to Compl. at 7–10). Miami Home took possession of the Mortgage and Note from Miss Jones on June 9, 2020. (Aff. of Note Possession dated Oct. 26, 2021, Dkt. No. 36 at 3–4; Allonge to the Note, Dkt. No. 36 at 15).

Beginning with the payment due on July 6, 2012 and for all subsequent payments thereafter, the Vieras failed to make payments due under the Note. (Compl. ¶ 20). Each failure to make a payment constituted an Event of Default under the Note and triggered a default under the Mortgage. (Mortgage at 6 ¶¶ 8–9; Note at 3). On November 2, 2017, the Margolin & Weinreb Law Group, LLP ("Margolin & Weinreb"), Miss Jones's law firm and debt collection agent, sent a "90 Day Notice" to the Vieras at the Subject Property warning them that they were at risk of losing the Subject Property. (Compl. ¶ 21; Notices dated Nov. 2, 2017 ("Notices"), attached as Ex. E to Compl. at 6–10). That same day, Margolin & Weinreb sent a "30 Day Notice" that informed the Vieras they were in default under the Note and Mortgage, and if they failed to submit payment, Miss

3

Jones could foreclose on the Subject Property. (Compl. ¶ 21; Notices at 1–5). The 90 Day Notice noted that the Vieras' loan was 1,946 days and $44,507.52 in default, and gave them 90 days to "take[ ] . . . actions to resolve this matter." (Notices at 6–7). The Vieras did not respond to the Notices or cure the defaults. (Compl. ¶¶ 23–24). The Complaint was filed on March 6, 2018; as of that date Miss Jones had physical possession of both the Mortgage and Note, and was the owner and holder of those instruments. (*Id.* ¶ 19).

The Complaint, brought pursuant to RPAPL, (*id.* ¶ 1), named the Vieras as defendants because they were the borrowers who executed the Mortgage on the Subject Property. (*Id.* ¶¶ 5–6). Miss Jones also sued three defendants who allegedly held liens or judgments against the Subject Property: Barclays, the City of New York Environmental Control Board, and the Transit Adjudication Bureau. (*Id.* ¶¶ 7–10). Magda Viera was served personally with the summons and Complaint on March 23, 2018 at the Subject Property, where the first floor was her place of business, Home Value Realty. (Summons Returned Executed dated Apr. 24, 2018 ("Magda Viera Summons"), Dkt. No. 11 at 1). On March 28, 2018, copies of the summons and Complaint were also mailed to Viera at the Subject Property. (Magda Viera Summons at 2). Proof of service—that is, the returned and executed summonses—was filed on April 24, 2018, 32 days after physical service of the summons and Complaint on the Vieras, and 27 days after mailing. Viera did not appear in the case, failed to answer, and as a result, the Clerk of Court entered default against her. (Entry of Default dated May 3, 2018, Dkt. No. 16).

On May 25, 2018, Miss Jones filed a motion for default judgment against all Defendants. (Notice of Mot. dated May 25, 2018, Dkt. No. 17). The Court ordered Miss

4

Jones to provide proof that service was adequate for the City of New York Environmental Control Board and the Transit Adjudication Bureau, (Order dated Dec. 7, 2018, Dkt. No. 19 at 1–4), and in response, Miss Jones voluntarily dismissed those two defendants. (Notice dated Dec. 13, 2018, Dkt. No. 20). The motion was denied without prejudice due to improper service and since Barclays—a junior lienholder—could not be held liable on the motion. *Viera*, 2019 WL 926670, at *1, *5. Miss Jones proceeded to voluntarily dismiss Barclays and Jack Viera. (Notice dated Feb. 13, 2018, Dkt. No. 25).

Miss Jones then filed a second motion for default judgment, (Notice of Mot. dated Aug. 22, 2019, Dkt. No. 27), which was denied without prejudice, and the case was stayed pending the resolution of *CIT Bank N.A. v. Schiffman*, 948 F.3d 529 (2d Cir. 2020). *Viera*, 2020 WL 3002359, at *1. After the stay was lifted, Miss Jones filed a third motion for default judgment. (Notice of Mot. for Default J. dated Aug. 23, 2021, Dkt. No. 34). The motion was denied as moot since Miss Jones had filed a motion to substitute in the interim; the motion to substitute was also denied since Miss Jones failed to attach the requisite allonges and recordings of transfers. (Order dated Oct. 14, 2021; Order dated Oct. 20, 2021). Miss Jones then filed a renewed motion to substitute Miami Home as Plaintiff, (Letter-Mot. dated Oct. 27, 2021, Dkt. No. 36), which the Court granted. (Order dated Oct. 29, 2021).

Thereafter, Miami Home filed the present motion for default judgment against Magda Viera. (Mot.). The motion included an Affidavit of Service. (*See* Aff. of Service dated Dec. 28, 2021 ("Service Aff."), attached as Ex. 7 to Mot. at 1). The Affidavit of Service indicated that Viera was served a copy of the motion and supporting papers via first class mail at the Subject Property and two other addresses, although the Affidavit

5

did not state which of those Miami Home understood to be Viera's last known residential address.  (*Id.*).

DISCUSSION

    I.    <u>Liability</u>

In deciding a motion for default judgment, a court "is required to accept all of the [plaintiff]'s factual allegations as true and draw all reasonable inferences in its favor." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).  A party's default is deemed an admission of all well-pleaded allegations of liability.  *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d. Cir. 1992); *Morales v. B & M Gen. Renovation Inc.*, No. 14-CV-7290, 2016 WL 1266624, at *2 (E.D.N.Y. Mar. 9, 2016), *report and recommendation adopted*, 2016 WL 1258482, at *2 (Mar. 29, 2016).

The court must then determine "whether the unchallenged facts constitute a legitimate cause of action."  10A Charles Alan Wright & Arthur R. Miller et al., *Federal Practice and Procedure* § 2688.1 (4th ed. 2021) ("Once the default is established, defendant has no further standing to contest the factual allegations of plaintiff's claim for relief.  Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law."); *Labarbera v. ASTC Labs. Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (adopting report and recommendation).

"In a mortgage foreclosure action under New York law, 'the lender must prove . . . the existence of an obligation secured by a mortgage, and a default on that obligation.'" *Gustavia Home, LLC v. Rice*, No. 16-CV-2353, 2016 WL 6683473, at *2 (E.D.N.Y. Nov. 14, 2016) (alteration in original) (quoting *R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 59 n.2 (2d Cir. 1997)); *see also E. Sav. Bank, FSB v. Ferro*, No. 13-CV-5882, 2015 WL

6

778345, at *6 (E.D.N.Y. Feb. 24, 2015). "[I]n a New York mortgage foreclosure action, a plaintiff makes a *prima facie* case . . . where the foreclosing party produces documentary evidence establishing the three elements of a foreclosure claim: (1) a mortgage, (2) a note, and (3) proof of default on the note by the mortgagor." *CIT Bank, N.A. v. Escobar*, No. 16-CV-3722, 2017 WL 3614456, at *4 (E.D.N.Y. June 16, 2017) (quoting *E. Sav. Bank*, 2015 WL 778345, at *3), *report and recommendation adopted*, 2017 WL 3634604, at *1 (Aug. 18, 2017) (quotations omitted).

Default judgment is not warranted because Miami Home has not demonstrated compliance with the statutory requirements set forth in RPAPL Article 13.

> Section 1304 of the RPAPL requires that, at least 90 days before commencing a home foreclosure action, a notice of default on the mortgage loan be sent by registered or certified mail and also by first-class mail to the last known address of the borrower, and to the residence that is subject to the mortgage. Section 1304 also prescribes the contents of the notice.

*Windward Bora LLC v. Armstrong*, No. 18-cv-6355, 2021 WL 606713, at *5 (E.D.N.Y. Feb. 16, 2021) (internal quotations and citations omitted). "Proper service of [an] RPAPL 1304 notice on the borrower or borrowers is a condition precedent to the commencement of a foreclosure action, and the plaintiff has the burden of establishing satisfaction of this condition." *CIT Bank N.A. v. Schiffman*, 999 F.3d 113, 116 (2d Cir. 2021) (alteration in original) (quoting *Deutsche Bank Nat'l Tr. Co. v. Spanos*, 102 A.D.3d 909, 910 (2d Dep't 2013)). "[F]ailure to strictly comply with section 1304 'is a sufficient basis to deny foreclosure relief.'" *Armstrong*, 2021 WL 606713, at *6 (quoting *Viera*, 2020 WL 3002359, at *1). And the failure to satisfy this statutory element may be considered on a motion for default judgment. *Freedom Mortg. Corp. v. Powell*, No. 18-CV-4265, 2020 WL 4932145, at *3 (E.D.N.Y. Aug. 24, 2020) ("[C]ourts in this district routinely review § 1304 compliance on motions for default judgment.")

7

(collecting cases); *Windward Bora, LLC v. Thompson*, No. 18-CV-1811, 2020 WL 1242828, at *4 n.6 (E.D.N.Y. Mar. 16, 2020). "Compliance with § 1304 can be 'established with proof of the actual mailings, such as affidavits of mailing or domestic return receipts with attendant signatures, or proof of a standard office mailing procedure designed to ensure that items are properly addressed and mailed, sworn to by someone with personal knowledge of the procedure.'" *Schiffman*, 948 F.3d at 533 (quoting *Citibank, N.A. v. Conti-Scheurer*, 172 A.D.3d 17, 21 (2d Dep't 2019)); *see also Wilmington Sav. Fund Soc'y, FSB as Tr. for Carlsbad Funding Mortg. Tr. v. White*, No. 17-CV-2288, 2021 WL 2548971, at *4 (E.D.N.Y. June 22, 2021) (explaining methods for satisfying section 1304 obligations) (adopting report and recommendation). "There is no requirement that a plaintiff in a foreclosure action rely on any particular set of business records to establish a prima facie case, so long as . . . the records themselves actually evince the facts for which they are relied upon[.]" *U.S. Bank N.A. v. Pickering-Robinson*, 197 A.D.3d 757, 759 (2d Dep't 2021).

The Complaint states that "[t]he 90-day notice provided by RPAPL 1304(1) was issued on November 2, 2017 to Magda Viera and Jack Viera. . . . Copies of the Default Notices and 90-day notices with proof of mailing and registration are annexed hereto[.]" (Compl. ¶ 21). This is not sufficient to obtain judgment against Viera.

Miami Home has failed to demonstrate compliance with section 1304 through any of the mechanisms the law deems sufficient. To demonstrate that the 90 day notice was mailed via certified and first class mail to the Viera's last known residence, Miami Home could have relied on an affidavit establishing such facts. *E.g., Nationstar Mortg., LLC v. LaPorte*, 162 A.D.3d 784, 786 (2d Dep't 2018) ("The plaintiff's submissions included an affidavit of a person employed by the plaintiff as a document execution

8

specialist that described the procedure by which the RPAPL 1304 notice was mailed to the defendant by both certified and first-class mail."). But Miami Home has not submitted an affidavit of service or mailing, *i.e.*, an affidavit indicating the notice was mailed on a particular date. Alternatively, if someone could not so aver—because no one had knowledge of the specific mailing made to Viera—Miami Home could have submitted an affidavit about its standard office mailing procedures and stated that that process would have been followed in this case. "A lender may create a rebuttable presumption that it complied with § 1304 by submitting proof of a standard office mailing procedure designed to ensure that items are properly addressed and mailed, sworn to by someone with personal knowledge of the procedure." *Schiffman*, 999 F.3d at 116 (quotations omitted); *e.g.*, *HSBC Bank USA, Nat'l Ass'n v. Ozcan*, 154 A.D.3d 822, 826–27 (2d Dep't 2017) (deeming affidavit sufficient where loan servicer swore to personal knowledge of business records and plaintiff's regular mailing practices, affirmed mailing occurred by first-class and certified mail, made references to bar codes, and attached copies of the 90-day notices). Miami Home did not do that either.

Instead, it proffers two pieces of evidence to demonstrate compliance. The first is the statement in the Complaint that the notice was mailed. (Compl. ¶ 21). This wholly conclusory allegation cannot support a finding of compliance with section 1304. *See, e.g.*, *Wells Fargo Bank, N.A. v. Watts*, No. 16-CV-6919, 2019 WL 8325097, at *4 (E.D.N.Y. Dec. 16, 2019) ("To demonstrate compliance with these stringent notice requirements, plaintiffs must submit more than conclusory statements to the Court.") (quotations omitted), *report and recommendation adopted as amended*, 2020 WL 5200903, at *1 (Sept. 1, 2020); *Wells Fargo Bank, NA v. Mandrin*, 160 A.D.3d 1014, 1016 (2d Dep't 2018) ("The unsubstantiated and conclusory statement of a vice

9

president of the plaintiff that a 90-day pre-foreclosure notice was forwarded by regular and certified mail to Mandrin in full compliance with all requirements of RPAPL § 1304 was insufficient to establish that the notice was actually mailed to Mandrin by first-class and certified mail[.]") (quotations omitted).

Presumably aware of this, and of the need to establish proof of compliance, Miami Home attached a copy of the envelope used in the mailing—which contained a first class mail bar code and certified mail bar code—and a copy of the certified mail receipt, unsigned by Viera. (Notices at 10). This too is not enough. This kind of evidence—which establishes only that Miami Home prepared the mailing, but not that it was sent—has been deemed by New York courts insufficient to demonstrate compliance with section 1304. *E.g.*, *Deutsche Bank Nat'l Tr. Co. v. LoPresti*, No. 2018-00710, 2022 WL 791222, at *2 (2d Dep't Mar. 16, 2022) (deeming evidence insufficient where neither plaintiff's counsel nor a representative of the loan servicer averred by affidavit "that they had personal knowledge of the mailing, or that the mailing was sent by both certified mail and first-class mail" and neither described any standard office procedure designed to ensure that the notices were mailed, and no domestic return receipts for the mailings were submitted in support of the motion); *Deutsche Bank Nat'l Tr. Co. v. Feeney*, 188 A.D.3d 997, 998 (2d Dep't 2020) ("A copy of a letter and envelope addressed to the defendant, each bearing a 20-digit number, was insufficient to eliminate all triable issues of fact as to whether the certified mailing actually occurred[.]"); *U.S. Bank Nat'l Ass'n v. Offley*, 170 A.D.3d 1240, 1242 (2d Dep't 2019) ("[T]he presence of numbered bar codes on the copies of the 90-day statutory notices submitted by the plaintiff did not suffice to establish, prima facie, proper mailing under RPAPL 1304[.]"); *CitiMortgage, Inc. v. Osorio*, 174 A.D.3d 496, 498 (2d Dep't 2019) ("The presence of 20-digit numbers

10

on the copies of the 90-day notices submitted by the plaintiff, standing alone, did not suffice to establish, prima facie, proper mailing under RPAPL 1304[[.]]"); *Citibank, N.A. v. Wood*, 150 A.D.3d 813, 814 (2d Dep't 2017) (finding references to purported tracking numbers stamped on the notice insufficient to establish compliance where unaccompanied by proof of a standard office mailing procedure or "independent proof of the actual mailing"). Neither the copy of the envelope nor the certified mail receipt contained a marking evidencing an actual mailing by the United States Postal Service ("USPS"). For instance, it contains no USPS marking—instead it contains a "Pitney Bowes" mark, suggesting it was prepared internally at the sender's address. *E.g.*, *Wells Fargo Bank, N.A. v. Trupia*, 150 A.D.3d 1049, 1050–51 (2d Dep't 2017) (evidence insufficient to establish compliance with section 1304 where affiant "did not aver that she was familiar with the plaintiff's mailing practices and procedures" and where certified mail receipt "contained no language indicating that it was issued by the United States Postal Service"); *see also Wilmington Sav. Fund Soc'y, FSB v. White*, No. 17-cv-02288, 2019 WL 4014842, at *5 (E.D.N.Y. May 28, 2019) ("Wilmington's submissions fail to adequately demonstrate compliance with RPAPL § 1304's mailing requirements. Plaintiff has not furnished any uncontroverted United States Postal Service records, such as certified mailing receipts or certificates of first-class mailing. Rather, Wilmington relies on copies of mailing labels that do not definitively establish that the 90-day notice was indeed mailed.") (internal citation and quotations omitted), *report and recommendation adopted*, 2021 WL 2548971, at *5.

Quite separately, section 1304 requires a 90 day notice be sent "to the last known address of the borrower, and to the residence that is the subject of the mortgage." RPAPL § 1304(2). Here, Miami Home's submission shows only that the notice was

11

mailed to Viera at the Subject Property: 109-04 Northern Blvd., Corona, New York 11368. (*See* Notices at 6, 10). And as stated above, there is no affirmative evidence, by way of affidavit, for example, establishing that at the time of mailing the Subject Property was Viera's last known address. Local Civil Rule 55.2 requires default judgment papers be sent to an individual's last known residential address. In this case, the default judgment motion papers were served at three addresses: the Subject Property; 2509 Butler Street, East Elmhurst, New York 11369 (a residential address); and 120 Bloomingdale Road, Ste 400, White Plains, New York 10605 (a commercial address). (Service Aff.). If 2509 Butler Street, East Elmhurst, New York 11369 was Viera's last known residential address at the time the 90 day notice was mailed, it should have been sent there as well. *E.g., Thompson*, 2020 WL 1242828, at *3 ("Because Thompson is alleged to reside at a different address than that of the Subject Property, plaintiff was required to serve her with the 90-day notice at both addresses.").

These failures to comply with the statute require denial of the motion. *See, e.g., Lightning 1179, LLC v. Rodriguez et al.*, No. 17-cv-06311 (E.D.N.Y. July 20, 2018) (Minute Entry) ("For the reasons stated on the record, the Court denied plaintiff's motion [for default judgment] and granted plaintiff leave to amend the complaint and re-file its motion after plaintiff has complied with the notice requirements set forth in . . . § 1304.").

## CONCLUSION

The Court, therefore, respectfully recommends that the motion for default judgment be denied. The typical practice would be to permit a plaintiff to renew its motion for default judgment upon a denial. There already have been three other such motions filed in the case. Before Miami Home is permitted to file yet another motion, it

12

should be directed to file a letter that appends documents including any affidavits demonstrating that it has complied with section 1304 and could cure the deficiencies identified herein.

Any objections to the Report and Recommendation above must be filed with the Clerk of Court within 14 days of receipt of this report. Failure to file objections within the specified time may waive the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate[] [judge's] report operates as a waiver of any further judicial review of the magistrate[] [judge's] decision.") (quotations omitted).

Plaintiff shall serve a copy of this Report and Recommendation on Viera and file proof of such service on the docket within two weeks of the date of this Report.

SO ORDERED.

*/s/ Sanket J. Bulsara* April 4, 2022
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York

13